This is Temu v. Eric Holder. Ms. Bukurynski? Did I butcher your name? No, that's right, Your Honor. Bukurynski. I did. I apologize. Look forward to hearing from you. Thank you, Your Honor. May it please the Court, my name is Katie Bukurynski, and I represent Petitioner Tumaini Temu. I'd like to reserve seven minutes for rebuttal, please, which my colleague, Mr. Tom Tynan, will deliver. Your Honors, we ask you today to reverse the BIA and the IJ's erroneous holding that Mr. Temu failed to prove that he was persecuted on account of his membership in a particular social group, that group being bipolar individuals in Tanzania who exhibit erratic behavior. The facts in this case are not contested. They were all found by the immigration judge and credited and affirmed by the BIA. And in fact, the petitioner's brief and the respondent's brief read the same, actually. The government, in this case, as a preliminary matter, says that you failed to exhaust your administrative remedies. Yes, Your Honor. What's your response? Because that's jurisdictional. Yes, Your Honor. They say that we have not exhausted our administrative remedies as far as arguing the particularity and social visibility, the applicability of the particularity and social visibility elements. Our response to that is that, first of all, we're asking this court to determine whether it will defer under Chevron to these requirements. This is not a question that the BIA can answer, whether this court should defer to the BIA's requirements. And second of all, Mr. Temu did draw the BIA's attention to this argument by noting in a footnote— The argument on deference? Correct. I think you're right, probably, that the deference is only something that the court could decide. But it seems like that there would be an underlying issue. As I understand your argument, perhaps I don't. You challenged the board's application, not just to the facts of your case to this three-part test, but you say they should go back to the Acosta rule and not the three-part rule. But I don't think that you ever challenged the existence of the three-part rule before the board. Is that right or wrong? Well, Your Honor, we didn't make the argument before the board, but we did note it in a footnote that this was an objection that we had, and we cited the case law as far as that objection goes. And the BIA then affirmed its application of these two requirements to these cases by citing them against Mr. Temu and applying them against Mr. Temu. I'm probably not being very clear. Maybe I'm confused, but it seems like to me there's a very important structural difference between making the argument that as we apply the facts to each one of these tests, the board was wrong in the way they applied the facts to each part. But there's a threshold question of whether or not you've challenged the board's use of the test as a legal mechanism. And what I'm asking you is where did you challenge the use of that test, not the application of the facts to the law, but the underlying test? Your Honor, we referenced it in footnote 35 in the brief to the BIA. We said that we reserved the argument to challenge these two requirements. Get away with that kind of thing, Barry. Normally you have to give the lower court, that's what we're usually dealing with, a shot at it. You can't just mousetrap the lower court by sitting on your claim and then raising it on appeal. Well, Your Honor, the BIA... You do. I mean, we have this come up all the time in criminal cases. And when they do that, we have to review it for what we call plain error, which is a more stringent standard. But you took a footnote in and said you disagreed with something, but you really didn't argue it beyond that. Well, Your Honor... Is that giving the lower agency a fair shot at it? Or are you obliged to give them a fair shot at it? Well, we believe that any further argument at the BIA would have been futile because the BIA has repeatedly applied these requirements in every case that they've heard since 2006. In fact, they applied them in this case as well against Mr. Temu. So, we believe that it would have been futile to argue any further to the BIA that they should reverse their own requirements when it was done. Does a futility analysis apply, though, when it's a statutory requirement as opposed to a judicially created exhaustion requirement? I thought if there was a statutory exhaustion requirement, there was not a futility... I may be wrong about that. Well, this very similar situation actually came up in the Valdevez-Galdanas case in the Third Circuit, which we do cite in our brief, but we don't discuss for this specific issue. But there, the petitioner had not raised this exact challenge at the BIA level, but the court held that because the BIA applied these requirements, therefore indicating that it believed them to still be valid, that was sufficient for the court to hear the case because the BIA raised them to respond. Your argument is basically, at best, you waive the right to challenge now that they use the three prongs, but before the BIA, you argued the facts that would have justified under the test they used that he had met those. Yes, Your Honor, and in fact, that is still our argument, that he does, in fact, meet each element of that test. And in fact, if you haven't put that evidence before them, it is before them, and they ruled against you using that three-prong test, and you appealed it. So therefore, there's no jurisdictional problem in that regard. Correct. But it might be if we were saying, you can't challenge that they used three, but you certainly didn't waive the fact that that's the analysis they gave to the facts that you presented before them. Correct, Your Honor. You say you win anyway. Right, exactly. Because Mr. Tamewood does satisfy each element of the test, particularity, immutability, and social visibility. And just to take each of those in turn, immutability requires... Last question on this point. Sure. Because I understand you're brief. You argue on brief, not just applicability of the facts to the test. You say the test is wrong. Yes, Your Honor. But you never told the BIA that. Well, Your Honor, we did note it in a footnote. We believe that further argument would have been futile before the BIA. We did note in the footnote that the test was wrong and that we objected to it. You said it shouldn't be afforded Chevron deference. Correct. I just reread it. I don't see anything in that footnote that talks about the test is wrong. Well, correct, Your Honor. And it's for this Court to decide whether it will defer to that test or not. But even if the Court does not choose to address that point, we believe that we still win on the facts here. Mr. Temu's condition of bipolar disorder is immutable. It's an incurable mental illness. He cannot control it. He cannot control the symptoms of it. In fact, the immigration judge found that if he were returned to Tanzania, he would not have access to medication that would be needed to control the symptoms. So he would not be able to control them. But if he takes the medication, the symptoms are controlled. The evidence is that the symptoms are controlled to some extent, but he could still exhibit these symptoms. But the IJ made a specific finding that he would not have that medication if he went to Tanzania. And, in fact, that was part of the underlying basis why she granted him Convention Against Torture Protection. Because she found, necessarily, if he were returned to Tanzania, he would exhibit the symptoms and he would be persecuted and tortured. Secondly, as far as the particularity requirement, that requires that the group that Mr. Temu proposed have discrete boundaries and be viewed as a discrete group in society. We've proposed a group of bipolar individuals, which is a medical diagnosis. It's very firm. It's very easy to tell who is in the group and who is not in the group. I thought your group was bipolar individuals who exhibited erratic behavior, which is different from a group of just bipolar individuals. Correct, Your Honor. It's actually more particular, more specific, because it's not any bipolar individuals who have any variety of that disease. It's bipolar individuals who manifest in this way that is visible and recognizable in Tanzanian society. And the evidence is that Tanzanians do see it as a particular class. They see it as what they call muwendo wazimu, which means possessed by demons. And so it's actually a more particular group than if we had just defined it as bipolar individuals. And that leads into the social visibility element, which requires that the group be viewed as a group in Tanzanian society or alternatively as if the members are viewed individually or can be observed individually as members of that group. And whichever way you look at this case, Mr. Temu satisfies those requirements. The group itself is identified by this slur, muwendo wazimu. These people are viewed as less than human. They're viewed as possessed by demons. They're very visible in society, and Mr. Temu himself is very visible in society, as is evidenced by the fact that he's repeatedly identified as being mentally ill and then is punished for it. And in fact, the immigration judge made that finding when she granted him cap protection, that he was persecuted because he was mentally ill. And she let him file her late papers because he was mentally ill. Is that right? Exactly, Your Honor. He was out of time on something? Exactly, Your Honor. He did not file with a... He recognized he was mentally ill. Did she describe it any further than what, in detail, when she let him file his papers out of time? Excuse me, Your Honor? Well, she let him file some papers. Correct, Your Honor. Late, because she said he was mentally ill. What kind of a mental illness did she recognize he had? This one, bipolar disease? She did find that he has bipolar disorder and that this is the reason that he was unable to file his asylum application in a timely matter. And she excused it because he was mentally ill. And then, in addition... Did he not have a lawyer back then? I don't believe he had a lawyer at that time. What we call a pro se party at that point. I think the first time he had a lawyer was in an individual hearing before the immigration judge. Your Honor, to address the... What's this cat relief getting? He got relief under the Convention Against Torture, which means we can't send him... We, the United States government, can't send him back to Tanzania, correct? Yes, Your Honor. Until when? Well, the standard is that we can't send him back unless there's evidence that he would not be tortured anymore in Tanzania. So the country conditions have to change. Correct. As long as they stay this way, he cannot be removed to Tanzania. He cannot be removed unless... Right, unless country conditions change. That differs from asylum, which you want... To what extent? You want... What would asylum get you? Your Honor, if he was granted asylum, he would be able to stay here as a permanent resident, eventually become a citizen. He would have employment authorization permanently. Right now he has to renew it every year, which is very difficult for him because of his mental illness. He's living in the United States and he's functioning. He's not hospitalized or anything right now, right? I believe right now he's taking medication. He has medication that he can take here. He's not in the hospital? He's not in the hospital, Your Honor. Does he work? He tries to work, though it's difficult because of his mental illness and also because of his employment authorization, which he has to renew every year. That's one of the conditions of just having withholding as opposed to asylum. He's never allowed to leave the country. If he leaves the country, he will not be able to come back. That's also different from asylum regulations. And he doesn't have the permanency that he would have with asylum. He could be sent back. All that has to happen is that the government has to find that he would not be tortured. They don't even have to find that he would not be persecuted. You've got a partial victory of him in the underlying proceedings. Yes, Your Honor. And, in fact, the facts... Most of the cases we come up with, they don't get anything. I mean, they've lost on all three. Your man got something. Yes, Your Honor. We're happy that he got that protection that he did, but we think that the facts that underlie that decision should have awarded him asylum because the immigration judge granted him that protection because she found that he was discriminated against because he was mentally ill. And that finding is one that she denied him on the asylum claim. We think it's the exact same factual finding. The standard under those two is very different. Correct, Your Honor. She did not have to find, for purposes of the cat, that he was discriminated against because he was mentally ill. But the fact that she did make that factual finding, it's in the record. She found that he was tortured because he was mentally ill and that other mentally ill people were also tortured because of that same condition. They were treated worse than other people. So while that's not a requirement of the cat, she did, in fact, make that finding, and we think that that is binding on her decision as to Nexus. The finding is to your favor, isn't it? Normally we say that if you couldn't meet the standards of withholding, then it's even harder for the cat, isn't it? Correct, Your Honor. I don't know why you didn't say that to Judge Agee's question. Yeah, it helps you. Exactly. Exactly. It does help us. Right. I believe my time is up, Your Honor. There's no further questions. You have some time reserved for your colleague there. Yes, we should have seven minutes reserved. Thank you. Mr. Shea? Good morning, Your Honors. Dan Sham, on behalf of the United States Government. This is a case where the petitioner, as Your Honors have noted, has been granted withholding of removal under the cat, so he no longer faces deportation to Tanzania. The sole question before the Court this morning is whether he's also eligible for asylum, so he can apply for lawful permanent residence. And what the Government's position is, what this case is really about, is whether mental illness itself can be a basis for a protected social group. Now, before I get into the merits of this case, let me just address some of Your Honor's questions from earlier about the exhaustion of administrative remedies. First, to the petitioner's argument that it would have been futile to raise the arguments in their brief to the Board, a couple things to address. First, their argument wasn't solely Chevron deference in their opening brief. Their argument that the Court should reject particularity and social visibility was because the Board unreasonably departed from its prior presence. The Board was unreasonable in its behavior, and I think, given that, the Board could have addressed those particular findings. The decisions that the Board relied upon in deciding particularity and social visibility were decided by three panel Board members. And so, under H.C.F.R. 1003.185, the Board could reconsider the decisions en banc. So, they could have filed, have those decisions reconsidered, but... Well, even if the petitioner has not exhausted the remedies in terms of challenging the underlying test, does it contain one part or three parts, would that bar them, then, on appeal from arguing the application of the facts of the case to that test? No, Your Honor. So, they can apply the application of the test, they just can't challenge the test itself, which has been our position in our response brief. And to answer your question, Judge Agee, futility is irrelevant when it comes to challenging the test and to support that. But you don't argue that they failed to exhaust the remedies in terms of arguing that the Board erred in applying the facts of the case to the actual test? No, Your Honor. So, turning to the merits of the case, it's important to note at the outset exactly what the group the petitioners are urging is. The exact group is bipolar individuals that exhibit erratic behaviors. Not bipolar individuals, not individuals who exhibit erratic behavior. And, as the agency properly found, that particular social group just doesn't seem to fit the requirements of particularity and social visibility. As applied to particularity, the problem is that bipolarity can't be a delimiting characteristic, since, as the evidence shows, most of the Tanzanians, including the medical... ...skipped over immutability. Is the fact that he can take the medicine and most of this goes away, does that make it not immutable? We think the Court can decide, based on the Board's decision. We chose not to defend that particular ground. We think particularity and social visibility are stronger grounds, and because each one individually, the failure to satisfy would mean asylum is denied. We felt particularity and social visibility were the grounds that we wanted to decide this case upon. But the IJ found that it was not an immutable characteristic. Isn't that right? Yes. As did the Board. And even you don't stand behind that. We did not concede error on the part of the agency, so... I mean, it's so kind of absurd, so you don't even argue that, do you? We feel like particularity and social visibility are stronger. They're stronger. Maybe they're even existent. Go ahead. With particularity, Your Honors, again, this is a factual finding, and so the standard review is, would any reasonable jurist be compelled to conclude that the agency erred? And we don't think that's the case based on this record. The record seems to suggest, or strongly show, that most Tanzanians don't know what bipolarity is, including the medical professionals. It's not just that they don't know it's bi-medical causes. They don't know what it is. But the record is, they got a name for it. That's for all mentally ill individuals, which is not... That's for mentally ill individuals. So that's an important point, Your Honors. Bipolar is mentally ill. Right, but mentally ill is a broader category. As the 28J letters show... So you're saying their category is too narrow? No, we're saying mentally... Okay, so mentally ill individuals, as a group, would be too broad, which is why they didn't use mentally ill individuals. They chose bipolar individuals for the exact reason that mentally ill individuals would probably be too broad. That's exactly... But the erratic behavior is even narrower than bipolar. That's like being off your medicine or something, perhaps. Right. Or the medicine's not working. Right. But then the question becomes, are people in Tanzania, from the medical providers to the people in society as a whole, going out of their way to look for bipolar individuals with erratic behavior to persecute them? Going out of their way to look for them? Or are they just doing so? He got out in the middle of the street and tried to direct traffic. Right? He was dealing with everybody and they put him in the hospital and tortured him, according to the IJ. Right. That was the way they handled him. And as a result of that, he got relief. And as the agency noted, the reason that happened was because of the erratic behavior, not because they thought he was bipolar. The erratic behavior could have been caused by any number of causes, which is the finding made by the IJ as well. Going back to your cat question, your honors, cat is in some ways a narrow form of relief because the persecution has to be more severe than asylum. That's true. And so often what happens is an alien who can show cat can show asylum. But asylum and withholding and removal in general are narrower in some ways because they're limited to a specific ground. So there's only five grounds asylum is offered under. Whereas cat can be for any reason that the government allows torture to happen in their country. So that's the difference between why the IJ was able to properly find that he was tortured because he was mentally ill. But what is it that the Attorney General doesn't want this man to have while he's here under the protection of the cat claim? What is it about asylum that they want to withhold from him? What does that benefit the country for him to be here? It's not so much about this particular petitioner, your honor. It's about protected social group as a category for asylum availability. This in some ways is a tough case. Is it a tough case on the social group issue? I think it's a sympathetic emotional case, your honor. If you go through the circuit course, there's no court that's ever held that a mental illness can constitute a protected social group. I think it's a fairly... We've found some particular social groups here the last couple of years and granted asylum protection, right? Right, your honor. Kristen Velarde I think is... There was one about a group that was potential victims of gang violence down there in Central America. Right. It was Kristen Velarde and I believe in that case the court held that a family member who testifies in open court against gang members can be found to have a protected social group, your honor. But going back to Judge Gregory's question, it's not about any particular alien. It's about the class itself. The other classes religion, gender, race, religion, seem to be more clearly defined in terms of who would fall in and fall out of the group. Protected social group can just about be applied to anybody if you define your group carefully enough. So the government has urged the court to follow the board's carefully defined test to keep the group so that it seems to fall within the intent of the INA to offer asylum protection to a limited class of individuals. That's what you wanted us to do in that MI13 case. Excuse me, your honor? That's what you wanted us to do. You resisted what we did in that MI13 case, the witnesses. Correct, your honor. And as I'm sure your honors know, the protected social group is a constantly litigated issue right now in the circuit courts. And we're trying to understand all the different parameters of what it does and doesn't include. And so if we were to apply the test to all mentally ill individuals or all mentally ill individuals who exhibit erratic behavior, which seems to be really what the petitioner's group is. They say that's not what they're asking for. Right, they're asking for bipolar individuals and that's a factual finding. And what we would urge the court to adopt is the fact that the agency properly found no one knows what bipolar disorder is. No one knows. It's an established DSM-3 diagnosis of a mental disorder. No one in Tanzania knows what it is. How do you know that? They don't have physicians there? That's the testimony in the record, your honor. Dr. Middow and Dr. Adams. The testimony is that the way to treat him is to tie him down for days at a time and to beat him. That's the way they treat him. Right, your  they're concerned. But as the IJ found, your honors, the we don't know what erratic behaviors are unique to bipolar disorder as opposed to something else like intoxication or as Dr. I think one of the experts testified to being an organic HIV ailment. It could be any number of things and there's nothing in the record that suggests which erratic behaviors are unique to bipolar disorder as opposed to just mental illness in general. Right, but the point is that I think that it speaks about immigration, the aspect of the attorney general's of what does our country represent in terms of whether we're going to protect people who are being treated obviously like maybe this country used to treat people too and put electroshocks and lobotomies and things like that or dip them in water because they would sit on witch trials and things like that. Yes, your honor, and we are protecting him. So withhold and remove under the cat is It goes back to you're protecting him but why should he be with hell the other more fuller life to recover because we want him to recover and to be productive while he's here and do all those things that we cherish as well as being free. Again, it goes back to the definition of a protected social group, your honor. Goes back to what? The definition of a protected social group. We just can't and he needs our protection and that's certified because you gave him protection and the question is why should we withhold asylum in this case because asylum is limited to five protected grounds, your honor. They're not. It's not available to anyone who has been persecuted in his home country. Exactly. Not anyone that particular eyes here. The particularization is bipolar disorder that acts out their active not just ideation but active behavior and that's what that's that's the category right and I think the important thing also to know your honor is this is a factual finding correct that the people in Tanzania are persecuting because of his erratic behavior not because he's bipolar. So if it's a factual finding it's not just the novel review of whether or not they're persecuting because he's bipolar it's whether or not the evidence is borne by substantial evidence. Is there any evidence that he doesn't have bipolar disorder? No, there's no evidence that he has but there's no evidence Ajay said he did and let him file his papers late. I believe Ajay said he was mentally ill not because he had She just said he was mentally ill? Right. And what did she say what about when granted him asylum? Granted him the cat relief. Was it for bipolar? It was because they were torturing him because he was mentally ill. I read the Ajay's essay. Bipolar is the only evidence of what his problem was. Right. It was uncontradicted. But the distinguishing characteristic of him is their erratic behavior. And don't you have to be to get cat you have to be persecuted for a protected reason, right? So any Suppose you're being persecuted because you're a criminal. We wouldn't give it to you. Right? We would if you were being tortured by your country. Let's say bread and water alone we wouldn't. But on the cat it has to be torture.  So you think solely because he was tortured no matter what the reason was. Right. Right. This guy's what a civil engineer? He's a civil engineer. Seems like he has some civil engineer trained. But I think from the record. He came in here legally to teach a class or something and then stayed too long? I believe so your honor. But I think from the record it showed that he was doing some type of cleaning in the area. I don't know if he finished his degree or not. But that seems to be what he was studying when he was in Tanzania. If your honors have no further questions we would ask the court to uphold the agency decision and deny this petition for review. Thank you. Thank you very much sir. Appreciate it. Mr. Tynan. May it please the court. I just have a few points to make on rebuttal. First, it seems like the government's position amounts the government's position on whether or not Mr. Temu should get asylum amounts to the fact that Tanzanians do not recognize bipolar disorder as a medical illness. Instead, they recognize medical illnesses as some sort of demon-possessed deranged characteristic. But it is fundamentally unfair to deny Mr. Temu asylum just because Tanzanians call mental illness mewandu bezimo while we call bipolar disorder or we specifically diagnose his mental illness as bipolar disorder with erratic behavior. Unfortunately fairness is not going to get you very far in these kind of cases because how we deal with Haitians versus other countries in the Caribbean different. So obviously that's not the standard. Fairness is it. That's true your honor. But even so mewandu bezimo and bipolar disorder with erratic, bipolar individuals who demonstrate erratic behavior are essentially two different ways of explaining the same thing. And when the IJ found that he was should be protected under the Convention Against Torture, she specifically found that he was singled out more frequently for beatings because he was mentally ill. And the government also seems to suggest that we're putting forward a particular social group of mentally ill people generally rather than bipolar individuals who demonstrate erratic behavior specifically. And that's not the case. Our proposed social group is bipolar individuals in Tanzania who demonstrate erratic behavior. And which brings us to the mutability element. The IJ improperly focused on just the erratic behavior not the bipolar disorder. There is abundant evidence in the record that his illness is neurologically based, can be managed but not cured, that his condition was something that he was essentially born with. So again when the IJ found the facts that she did under the Convention Against Torture, those same facts should have been enough to give him asylum. That's the danger of coming up on rebuttal because you're here to rebut something. Let me ask you this question. Suppose you had the same facts, same kind of torture occurred but it remained undistinguished in terms of what his diagnosis is. Wouldn't you have the same claim for Kat? Indistinguished in terms of his mental illness? Yeah, what it is. He has the same behavior and mental illness but it's undiagnosed. Wouldn't you have the same Kat claim? Not here, Your Honor because the IJ specifically said that he was tortured because of his mental illness. Yeah, a mental illness, that's how you got Kat. Correct. But in terms of the particularized group for asylum, then it has to be for some reason that we delineate in terms of why that group is targeted, right? So aren't you back to be all mentally ill people? That's the government. But you're here to rebut it. That's their argument. Correct, Your Honor. And we're not here to say that all mentally ill people are supposed social groups. I know you don't want it that large but the point though is unless you can define that they kind of knew that was the reason for their persecution, you're left with just torture there. Now you're trying for asylum, you have to then establish a particularized group for a targeted reason. Is it family? Is it religion? Is it whatever? That's what the government is saying. How do you connect that with the bipolar when you haven't established that was the reason for the torture? It was just mental illness, aren't you? Really, in order to win, you almost have to be broad enough to cover mental illness. And even though you're not asking for it beyond bipolar, the structure of your argument is such that you almost have to because you can't establish there was a particularized reason for the persecution. That's their argument. So what's your rebuttal to that? The answer would be that the evidence of the record shows that the erratic behavior and the symptoms that he displayed were, are most likely to be the result of bipolar disorder. And that people who recognize, people in Tanzania who recognize individuals as Mewandu, Azimu, they would be, those would most likely be people who had bipolar disorder or a similar disorder, schizophrenia. Okay. You can go ahead. You don't have much time. And on that same point, just a couple last items on that. The BIA and granted non-precedential cases has found, for example, bipolar disorder in Peru to be a particular social group. They found Peruvian psychiatric patients with serious and chronic mental illness generally without any analysis of whether social disability was required to constitute a particular social group. Another case, they found, again, Peruvians with serious and chronic mental disabilities with no discussion of particularity. Whose rulings were those? The first one was Matter of Moscosco. Is that BIA? BIA. And granted, these are unpublished, non-precedential. Yes. Correct. And I understand that those decisions are not controlling, but they're still... But you're saying they're just speaking out of both sides of their mouth. It speaks to the same issue, Your Honor. Yes. So if you're honest, I don't have any other questions. We appreciate it very much. Thank you. We'll come down and greet counsel and take a quick break. ... ... ... ...
judges: Robert B. King, Roger L. Gregory, G. Steven Agee